**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                :
WALTER A. TORMASI,              :
                                :
            Plaintiff,          :   Civil Action No. 09-5780 (JAP)
                                :
      v.                        :   **MEMORANDUM OPINION AND ORDER**
                                :
GEORGE W. HAYMAN, et al.,       :
                                :
            Defendants.         :
_____:

This matter comes before the Court upon Plaintiff's motion (Docket Entry No. 4) seeking reconsideration of this Court's order issued on January 12, 2010, and it appearing that:

1.   Plaintiff, an inmate confined at New Jersey State Prison, Trenton, New Jersey, filed a civil complaint alleging that Plaintiff chipped his tooth (which resulted in visual defect but no pain) and had a temporary filling installed to remedy the visual aspect and further deterioration.  See Docket Entry No. 1.  When the temporary filling deteriorated, Plaintiff began experiencing minor pain and gum bleeding, with pain slowly increasing to, allegedly, a serious level of pain.  See id.  Eventually, when the pain became, allegedly, excruciating, Plaintiff's tooth was extracted.  See id.  According to the Complaint, Plaintiff suffered a substantially lengthy period of severe pain prior to the tooth extraction.  See id.

2.    Upon screening of Plaintiff's complaint, the Court noted

that the allegations raised by Plaintiff depict three

distinct periods: (a) the period during which Plaintiff,

after having the chip filled, experienced no pain or

bleeding whatsoever ("Non-Medical Period"); (b) the period

during which Plaintiff, allegedly, experienced minor

bleeding and/or slight degree of pain ("Minor Medical

Period"); and (c) the period during which Plaintiff,

allegedly, experiences substantial pain ("Serious Medical

Period").  See Docket Entry No. 4.  Since Plaintiff did not

experience any physical pain or any other physical symptom

during the Non-Medical Period, the Court dismissed

Plaintiff's allegations to that effect, finding that --

during that stage -- Plaintiff did not suffer of a serious

medical need, i.e., he did not experience an injury of

constitutional magnitude.  Although Plaintiff's allegations

as to the Minor Medical Period did not depict the

circumstances that could be squarely qualified as a "serious

medical need" for the purposes of the Eighth Amendment, the

Court -- mindful of the finesse of the Eighth Amendment law

detailed below -- proceeded Plaintiff's allegations as to

the Minor Medical Period (together with Plaintiff's

allegations as to the Serious Medical Period) past the sua

sponte dismissal stage and directed service.  See id.

3.   Plaintiff's motion for reconsideration expresses Plaintiff's

disappointment with the fact that the Court dismissed his

allegations as to the Non-Medical Period.[1]  See Docket Entry

No. 4.  Specifically, Plaintiff maintains that his medical

need during the Non-Medical Period was sufficiently serious

to meet the standard of the Eighth Amendment because

Plaintiff believes that his tooth could have been saved from

extraction.  See id.  In support of his contention,

Plaintiff: (a) asserts that the substitution of the

temporary filling by a permanent one was anticipated by the

dentist who installed the temporary filling; and (b) relies

on Monmouth County Correctional Institution Inmates v.

Lanzaro, 834 F.2d 326 (3d Cir. 1987), and the case cited in

Lanzaro, i.e., Helling v. McKinney, 509 U.S. 25 (1993), both

of which Plaintiff reads as standing for the proposition

that the Eighth Amendment requires the prison officials to

---

[1]  Plaintiff also filed another motion for reconsideration
seeking reinstatement of terminated Defendants on the grounds
that Plaintiff is raising state law claims against them.  See
Docket Entries Nos. 6, 8.  Plaintiff's state law claims, however,
are reserved subject to establishing the Court's federal
jurisdiction over this matter.  If the Court establishes its
federal jurisdiction over Plaintiff's claims, Plaintiff would be
obligated to show that his state law claims meet the requirements
of Rules 18 and 20, e.g., that Plaintiff's state law claims arise
out of the same transactions upon which Plaintiff's federal
claims rest.  Therefore, when -- and if -- Plaintiff's federal
claims are jurisdictionally established, Plaintiff may move to
amend his complaint by stating his state law claims against other
entities that were involved in the particular transactions that
underlying Plaintiff's surviving federal claims, if any.

protect inmates from any future harm.  <u>See</u> docket Entry No. 4, at 5-6.  Consequently, Plaintiff maintains that, since the temporary filling was destined to eventually deteriorate, the prison officials were constitutionally obligated to substitute it with a permanent filling in order to save Plaintiff's tooth and protect Plaintiff from any potential pain that took place during the Minor Medical and Serious Medical Periods.  <u>See</u> <u>id.</u>

4.  Plaintiff errs in his conclusions and his chain of deducements by conflating two distinct issues: (a) the preservation of Plaintiff's tooth; and (b) protection of Plaintiff from serious pain (or from injury to his health or life).  The former facially fails to state a claim under the Eighth Amendment,[2] while the latter duty could not have arose until Plaintiff's physical symptoms, such as pain or bleeding, appeared.  As the Court already explained to Plaintiff, "[i]n order to state a cognizable claim, a

---

[2] Arguably, Plaintiff's claim that he suffered an injury as a result of loss of his tooth might be construed as a claim under New Jersey law, <u>i.e.</u>, the New Jersey Tort Claims Act, N.J.S.A. §§ 59:1-1, <u>et</u> <u>seq.</u>, which provides a post-deprivation remedy for unauthorized deprivation of property by public employees.  (The Court expresses no opinion as to the validity of Plaintiff's claim under the NJTCA.)  Since the NJTCA is an available remedy providing all the process which is due with regard to loss of property, Plaintiff's § 1983 claim to that effect must be dismissed.  <u>See</u> <u>Holman v. Hilton</u>, 712 F.2d 854, 857 (3d Cir. 1983); <u>Asquith v. Volunteers of America</u>, 1 F. Supp.2d 405, 419 (D.N.J. 1998), <u>aff'd</u> 186 F.3d 407 (3d Cir. 1999).

prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to *serious medical need*," Estelle v. Gamble, 429 U.S. 97, 106 (1976) (emphasis supplied), not any other need, e.g., a "serious cosmetic" need or a "minor medical" need.

5.   The Court of Appeals in Lanzaro did not focus on the issue of what constitutes a "serious medical need"; rather, the Lanzaro court addressed the issue of what types of wrongful denial of medical care meet the Estelle test.  Specifically, the Court of Appeals held that prison personnel may manifest "deliberate indifference" if the "denial exposes the inmate 'to undue suffering or the threat of tangible residual injury [to the inmates' health or life]." Lanzaro, 834 F.2d at 346 (quoting Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir. 1976)).  Here, Plaintiff's facts unambiguously indicate that Plaintiff experienced no "undue suffering" during the Non-Medical Period and the Minor Medical Period and, had Plaintiff been provided with a dental treatment (either in the form of a permanent filling or tooth extraction) prior to developing any serious physical symptom, Plaintiff would have never known any medical need of constitutional magnitude.  Therefore, Lanzaro lends no support to Plaintiff's position.

6.    Plaintiff's reliance on Helling is equally misplaced.  The
      Eighth Amendment does not obligate prison officials to
      provide treatments against speculative harm; had it been
      otherwise, any common cold could be presumed to be the
      source of potential future pneumonia and failure to treat
      that common cold would be a constitutional violation.
      However, prison officials have no obligation to look into a
      "crystal ball" or to expect the worst case scenario.  See
      Cooper v. Casey, 97 F.3d 914, 916 (7th Cir. 1996) (untreated
      headache does not violate the Constitution); Grant v. New
      York City Dep't of Corrections, 1996 U.S. App. LEXIS 33502
      (2d Cir. Dec. 23, 1996) (occasional chest pain, nausea,
      inability to keep food down, rapid weight loss, dizziness,
      light-headedness, unsteadiness and emotional distress cannot
      qualify as "a condition of urgency, one that may produce
      death, degeneration or extreme pain"); Gibson v. McEvers,
      631 F.2d 95 (7th Cir. 1980) (failure to treat symptoms of
      common cold does not violate Eighth Amendment); Universal
      Calvary Church v. City of New York, 2000 U.S. Dist. LEXIS
      15153 (S.D.N.Y. Oct. 13, 2000) (insomnia does not qualify as
      a "serious injury").  However, in Helling, the Supreme Court
      found that the Eigth Amendment might still be violated if
      the conditions of confinement are such that they "truly pose
      a significant risk of proximate and substantial harm," i.e.,

if "there is a sufficiently broad consensus that exposure of anyone to the [particular harm would result in an injury to one's health or life,] even though the effects of exposure might not be manifested for some time."  Helling, 509 U.S. at 34.  Applying this concept to the circumstances presented in Helling (i.e., where the plaintiff was housed with an inmate who smoked five packs of cigarettes per day), the Court declined to automatically qualify second-hand smoking (the injury not fully known in 1993, that is, the year when Helling was decided) as a "not serious" one, stating that such dismissal should be conducted only upon discovery. Following the teaching of Helling, this Court, out of abundance of caution, did not dismiss Plaintiff's claims as to the Minor Medical Period; same as the Supreme Court concluded that discovery might establish that the danger of being locked in a cell with a person smoking five packs of cigarettes a day might be proximately correlated to the danger of lung cancer, this Court preserved Plaintiff's Minor Medical Period claims recognizing that: (a) even if this minor pain/minor bleeding cannot qualify as a "serious medical injury" per se, Plaintiff's alleged minor bleeding and/or minor pains might be proximately correlated to Plaintiff's alleged later-suffered serious pain; and (b) this correlation might be shown to be such that Defendant's

ignorance of it could amount to a violation of
constitutional magnitude.[3]  In other words, had it not been
for the holding of Helling and its progeny, this Court would
be constrained to dismiss all Plaintiff's claims as to the
Minor Medical Period together with Plaintiff's Non-Medical
Period claims, and proceed past the sua sponte dismissal
stage only the claims related to the Serious Medical Period.
Conversely, Plaintiff's position that he can stretch the
holding of Helling to salvage his claims during the Non-
Medical Period is without merit.

7.   For the foregoing reasons, Plaintiff's motion for
reconsideration will be denied.  In the event Plaintiff
disagrees with the Court's conclusions, Plaintiff shall
present his challenges to the Court of Appeals upon final
disposition of this matter.  See Assisted Living Associates
of Moorestown, L.L.C., v. Moorestown Tp, 996 F. Supp. 409,
442 (D.N.J. 1998) (mere disagreement with the district
court's decision is an inappropriate basis for a motion for
reconsideration; it should be raised through the appellate
process) (citing Bermingham v. Sony Corp. of America, Inc.,
820 F. Supp. 834, 859 n.8 (D.N.J. 1992), aff'd, 37 F.3d 1485

---

[3] The Court's reasoning underlying the Court's decision not
to dismiss Plaintiff's claims related to the Minor Medical Period
shall not be construed as the Court's finding that Plaintiff
actually established -- rather than merely asserted --
Defendant's liability as to that period.

(3d Cir. 1994); <u>G-69 v. Degnan</u>, 748 F. Supp. 274, 275

(D.N.J. 1990)).

IT IS, therefore, on this 1st day of March, 2010,

ORDERED that Plaintiff's motion for reconsideration, Docket

Entry No. 4, is denied; and it is further

ORDERED that the Clerk shall serve a copy of this Memorandum

Opinion and Order upon Plaintiff by regular U.S. mail.


/s/   Joel   A.   Pisano_____
**Joel A. Pisano**
**United States District Judge**