**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                                :
WALTER A. TORMASI,              :
                                :
            Plaintiff,          :   Civil Action No. 09-5780 (JAP)
                                :
       v.                       :   **MEMORANDUM OPINION**
                                :
GEORGE W. HAYMAN, et al.,       :
                                :
            Defendants.         :
_____:
```

This matter comes before the Court upon Defendants' motions ("Motions"), see Docket Entry Nos. 25, 30, 39 and 40, seeking dismissal of Plaintiff's constitutional challenges pursuant to Federal Rule of Civil Procedure 12(b) or, in alternative, Rule 56, and dismissal of Plaintiff's negligence claims pursuant to Rule 12(b). For the reasons set forth below, Defendants' Motions will be granted, and Plaintiff's claims will be dismissed.

**I.    Legal Standard**

1.    Rule 12(b)(6) Standard

Under Fed. R. Civ. P. 12(b)(6), the defendant bears the burden of showing that no claim has been presented. See Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). A district court must accept as true all of a plaintiff's factual allegations, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to

relief.  See Phillips v. County of Allegheny, 515 F.3d 224, 233
(3d Cir. 2008).  A complaint must contain sufficient factual
matter to state a claim that is facially plausible.  See Gelman
v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir.
2009) (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009),
and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

   2.   Summary Judgment Standard

   Summary judgment is appropriate under Fed. R. Civ. P. 56 if,
on the record, "there is no genuine issue as to any material fact
and . . . the moving party is entitled to judgment as a matter of
law."  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S.
317, 322 (1986); Carrasca v. Pomeroy, 313 F.3d 828, 832-33 (3d
Cir. 2002).  A factual dispute is genuine if a reasonable jury
could return a verdict for the non-movant, and it is material if,
under the substantive law, it would affect the outcome of the
suit.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).  In deciding whether summary judgment should be granted,
the Court considers the facts drawn from the "pleadings, the
discovery and disclosure materials on file, and any affidavits"
and must "view the inferences to be drawn from the underlying
facts in the light most favorable to the party opposing the
motion."  Fed. R. Civ. P. 56(c); Curley v. Klem, 298 F.3d 271,
276-77 (3d Cir. 2002) (internal quotations omitted).

   However, while the Court shall "view the facts in the light

most favorable to the nonmoving party and draw all inferences in that party's favor," Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (citation omitted), summary judgment will not be denied based on mere allegations or denials in the pleadings; instead, some evidence must be produced to support a material fact, and this requires more than the "mere existence of a scintilla of evidence" supporting the non-moving party.[1] Anderson, 477 U.S. at 252; see also Fed. R. Civ. P. 56(c)(1)(A); United States v. Premises Known as 717 S. Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993).  Thus, to survive a motion for summary judgment, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  Anderson, 477 U.S. at 249.

## II.  Background

### 1.  Procedural Background

Plaintiff filed his complaint on November 13, 2009.  See Docket Entry No. 1.  This Court screened the complaint for sua sponte dismissal, see Docket Entry No. 3, and issued a decision dismissing Defendants Hayman, Colella, Ricci, Barnes, Bell, Drumm, Holmes, Mee, Moleins, Warren, UMDNJ, UCH, Azara, Koli,

---

[1] Simply put, self-serving "unsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also Anderson, 477 U.S. at 248 (the party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial).

Bakr, Brewin, Brown, Clark and Bethea.  See id. (detailing the
bases for the Court's determination to that effect).  In
addition, the Court dismissed, sua sponte, some of Plaintiff's
challenges against Defendants Mann ("Mann") and Spingler
("Spingler").  See id.  However, this Court proceeded past the
sua sponte dismissal stage the remainder of Plaintiff's
challenges against Mann and Spingler and ordered that they answer
those challenges.  See id.  Plaintiff moved for reconsideration
of the Court's sua sponte screening decision, see Docket Entry
No. 4; however, that motion was denied.  See Docket Entry No. 9
(explaining to Plaintiff the shortcomings of Plaintiff's
position).  Consequently, this matter proceeded, with discovery
closed by August 5, 2011, and dispositive motions due by August
12, 2011.  See Docket Entry No. 19.  Defendants Mann and Spingler
timely filed the Motions at bar.  See Docket Entries Nos. 25, 30,
39 and 40.  Plaintiff filed his opposition with regard to Mann's
Motions, see Docket Entries Nos. 31 and 32, and waived his
opportunity to oppose Spingler's Motions.

    2.   Factual Background

    In August 2008, Plaintiff, an inmate at the New Jersey State
Prison ("NJSP"), chipped his tooth and sought dental care in
connection with that incident.  Mann, a dentist at the NJSP,
examined Plaintiff on August 14, 2008, and determined that the

chipped tooth, ("tooth '#30'" or "1st molar")[2] was broken.  Mann concluded that Plaintiff's chipped 1st molar had to be extracted, and that such extraction would be best done by a trained oral surgeon due to the complexity of the procedure.  Mann informed Plaintiff of his conclusion, as well as of the fact that he would recommend that Plaintiff be put on the list of inmates applying for treatment by an oral surgeon.[3]

As time passed by, Plaintiff developed gum bleeding near the chipped tooth.  In connection with that bleeding: (a) Plaintiff had an appointment with Mann scheduled for October 17, 2008, but did not attend that appointment; (b) Plaintiff had another

---

[2] The "#30" tooth, known as the "1st molar," is situated in the depth of a person's mouth. See <<http://www.rcdentaloffice.com/faq-toothnumber.html>>.

[3] Mann avers that the NJSP system for an inmate to be seen by the oral surgeon is as follows:

> The inmate is first seen by the general dentist who evaluates the inmate's dental complaint.  The general dentist assesses the tooth/teeth, which require extraction and makes a determination as to whether he, the general dentist, can extract the tooth/teeth.  If it determined that the general dentist cannot extract the tooth, an order will be forwarded to the dental director indicating the extraction requested and the reason for the oral surgeon to perform the treatment.  At this point the dental director makes a judgement as to whether or not the inmate should be placed on the oral surgeon's schedule.  This is neither a guarantee nor an automatic process for the inmate to be seen by the oral surgeon.  As the oral surgeon is at the prison facility only one day per month, there are times when an inmate will have to wait several months to be seen.

Docket Entry No. 25-3.

appointment with Mann scheduled for October 30, 2008, but – again – did not attend that appointment; (c) Plaintiff attended his appointment with Mann on November 11, 2008, during which Mann re-examined Plaintiff and concluded that, at that juncture, it would be still better to wait for Plaintiff's chipped tooth to be extracted by a trained oral surgeon; and (d) Plaintiff did not attend his follow-up appointment with Mann on February 3, 2009. In the interim, on December 7, 2008, Plaintiff submitted a grievance complaining about his dental care.  That grievance was then forwarded to Spingler.

According to Plaintiff's complaint, he began experiencing substantial pain in the area of his chipped tooth around December 29, 2008.  He spoke to a nurse the next day and obtained pain-reducing medication.  He also asserts that, on January 27, 2009, he submitted another remedy form to Spingler; that form included complaints about his dental care and also about Spingler's failure to respond to Plaintiff's prior grievance.  Spingler responded by recommending that Plaintiff submit a medical request with regard to the dental needs Plaintiff was experiencing at that particular time.  Plaintiff submitted such medical request on February 14, 2009.  Four days later, on February 18, 2009, Plaintiff was seen by Mann again; upon finding that Plaintiff's chipped tooth so deteriorated that it needed to be extracted immediately, Mann elected to try extracting the tooth on his own.

After performing the extraction, Mann noted that a small root tip remained, but he did not attempt to retrieve or remove that tip because he was concerned that such surgical endeavor might result in an injury to Plaintiff's nerve system in the area of the 1st molar.[4]  He reasoned that – as a general dentist rather than a specialized oral surgeon – he was not the best-suited medical professional to perform such a task.  Plaintiff was prescribed pain medication and directed to notify Mann of any pain or swelling.  On May 28, 2009, Plaintiff was seen by an oral surgeon, who removed this residual fragment of Plaintiff's tooth.

    3.  <u>Mann's Position</u>

    Mann maintains that he was not deliberately indifferent to Plaintiff's medical needs.  He points out that Plaintiff had continuous access to his care, and the multi-week gaps between Plaintiff's visits to him were a result of Plaintiff's failure to attend his scheduled appointments with Mann.  Mann also points out that his initial decision not to attempt extraction of Plaintiff's tooth on his own, as well as his decision not to attempt removal of the root tip after the extraction had to be

_____

    [4] Mann's submission makes reference to "the mand nerve." Mann appears to be referencing the "mandibular nerve," which exits at the base of the skull and protracts through the foramen ovale, and is in close proximity to wisdom teeth and to 1st molars.  <u>See</u> <<http://emedicine.medscape.com/ article/82622-overview>>.  An injury to the mandibular nerve can affect the functions of the lips and tongue, leaving the injured person with difficulty speaking and with no sensation in most of his or her mouth.  <u>See</u> <<http://www.dentalmal.com/wisdom.html>>.

performed by Mann, cannot be considered acts of deliberate indifference, because each of these decisions was a result of Mann's professional judgment as to the best course of treatment at each particular set of circumstances.  Additionally, Mann maintains that the fact that he eventually elected to extract Plaintiff's tooth on his own was a result of Mann's professional judgment because, by that time, such extraction could no longer be postponed.  Finally, turning to Plaintiff's state law-based negligence claims, Mann asserts that these challenges are subject to dismissal for Plaintiff's failure to comply with state law requirements.  See generally, Docket Entry Nos. 25, 30 and 35.

    4.  Spingler's Position

Spingler asserts that her alleged failure to respond to Plaintiff's December 7, 2008, grievance, even if presumed true, cannot be construed as establishing Spingler's deliberate indifference to Plaintiff's medical needs.[5]  And, with regard to the response she sent to Plaintiff's January 27, 2009, grievance, Spingler maintains that her recommendation to Plaintiff to submit a request for medical treatment cannot be construed as showing that she was deliberately indifferent to Plaintiff's dental needs.  Spingler's response to Plaintiff's state law-based

---

[5] Spingler avers that she did not receive Plaintiff's December 7, 2008, grievance; however, for the purposes of her arguments raised at the instant juncture, Spingler adopts the presumption that Plaintiff's allegations about his filing of that grievance are true.

negligence challenges is substantively identical to that of Mann's.  See generally, Docket Entries Nos. 39 and 40.

     5.  Plaintiff's Position

While Plaintiff did not oppose Spingler's Motions, Plaintiff filed an opposition to Mann's Motions.  See Docket Entry Nos. 31 and 32.  In his opposition, Plaintiff asserts that Mann was deliberately indifferent to his dental needs because Mann could have envisioned that a delay in tooth extraction might result in deterioration of the tooth, and such deterioration could eventually cause Plaintiff "unnecessary pain and suffering."  In addition, Plaintiff maintains that Mann erred in his initial conclusion that Plaintiff's tooth would be best extracted by an oral surgeon, because Mann eventually extracted the tooth on his own, and because Mann extracted others' teeth on other occasions. Plaintiff also maintains that his failure to attend numerous appointments he had scheduled with Mann was a result of various security-related events at the NJSP, and was therefore not his fault.  See, generally, id.

## III. Analysis

     1.  Plaintiff's Constitutional Claims

          a.  Eighth Amendment Standard

Plaintiff has a protected right in being incarcerated at a place of confinement conforming to the standards set forth by the Eighth Amendment.  The Constitution "does not mandate comfortable

prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). In its prohibition of "cruel and unusual punishments, the Eighth Amendment . . . imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials . . . must take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-527 (1984), see Helling, 509 U.S. at 31-32; Washington v. Harper, 494 U.S. 210, 225 (1990); Estelle v. Gamble, 429 U.S. 97, 103 (1976).

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. See id. at 106.

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to

medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992).  Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, as well as those conditions which, if untreated, would result in lifelong handicap or permanent loss. See Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.1987), cert. denied, 486 U.S. 1006 (1988).

    "Deliberate indifference" exists "where [a] prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse, 182 F.3d at 197.  Furthermore, deliberately delaying necessary medical diagnosis for a long period of time in order to avoid providing care constitutes deliberate indifference that is actionable.  See Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993). Deliberate indifference is also evident where officials erect arbitrary and burdensome procedures that result in interminable delays that deny medical care to suffering inmates.  See Lanzaro, 834 F.2d at 346-47.  However, inconsistencies or differences in medical diagnoses, delays unaccompanied by arbitrary or unduly

burdensome bureaucratic procedures, and refusals to consider an inmate's self-diagnosis or to perform tests or procedures that the inmate desires, do not amount to cruel and unusual punishment.  See, e.g., White v. Napoleon, 897 F.2d 103 (3d Cir. 1990) (mere disagreements over medical judgment or treatment do not state Eighth Amendment claims); Alsina-Ortiz v. Laboy, 400 F.3d 77 (1st Cir. 2005)(doctor's failure to respond to certain request for services by the inmate, in context of the doctor's continued and regular services, did not deprive the inmate of any meaningful treatment); Smith v. Sator, 102 Fed. Appx. 907 (6th Cir. 2004) (where a prisoner alleged that defendants did not provide various specialized medical tests that the prisoner found to be necessary based on his reading of medical literature, the court held that the complaint was frivolous because refusal to provide specialized tests amounted to nothing more than a difference of opinion regarding the medical diagnosis and treatment and did not rise to the level of an Eighth Amendment violation); Lopez v. Kruegar, 1990 U.S. Dist. LEXIS 6808 (E.D. Pa. June 4, 1990) (where plaintiff stated that he was receiving medication but felt that additional medical tests should be taken, his allegations were directed at the wisdom or quality of treatment and did not state a claim); Coleman v. Crisp, 444 F. Supp. 31 (W.D. Okla. 1977) (difference of opinion between plaintiff and doctors concerning availability of treatment and

medication did not establish violation of constitutional right or sustain claim).

Moreover, prison officials have no obligation to speculate about the future development of a medical condition in order to presume the worst case scenario.  See, e.g., Dawson v. Frias, 2010 U.S. Dist. LEXIS 30513, at *8 (D.N.J. Mar. 30, 2010); Pilkey v. Lappin, 2006 U.S. Dist. LEXIS 44418, at *45 (D.N.J. June 26, 2006); Patterson v. Lilley, 2003 U.S. Dist. LEXIS 11097 (S.D.N.Y. June 20, 2003).

b.   Judgment in Favor of Mann Is Warranted

Here, the record before this Court establishes that Mann did not unduly delay diagnosing Plaintiff's injury; such diagnosis was provided and the course of recommended treatment - the extraction of Plaintiff's chipped tooth - was selected at the first visit Plaintiff had with Mann.  Compare Durmer, 991 F.2d 64.  Moreover, no fact in the record indicates that Mann delayed Plaintiff's treatment for non-medical reasons, or that he prevented Plaintiff's treatment.  Compare Rouse, 182 F.3d at 197.

Furthermore, there is no indication that Mann intentionally refused treatment to Plaintiff.  See id. Indeed, at the very first visit, and during each of the following visits, Mann attended Plaintiff and exercised his professional judgment.  The conclusions reached by Mann as a result of the exercise of his professional judgment changed in correspondence with the changes

in Plaintiff's condition.  Consequently, during the initial visit
and following visit, Mann concluded that, based upon his
professional judgment, the benefit of having Plaintiff's 1st
molar extracted by an oral surgeon - a person having specialized
skills different from those of Mann's - outweighed the
disadvantages associated with Plaintiff's waiting for his
appointment with an oral surgeon.[6]  Accord White v. Napoleon, 897
F.2d 103.  This conclusion was based upon his reasoned,
professional determination that his skills were limited or
different from those required for performance of the specialized
task.  Cf. id.; see also Coleman, 444 F. Supp. 31; Dawson, 2010
U.S. Dist. LEXIS 30513, at *8.  Accordingly, Mann's initial
treatment of Plaintiff without extracting Plaintiff's tooth on
his own does not constitute an act of deliberate indifference.[7]
See White, 897 F.2d 103.

Additionally, Mann's later election to extract Plaintiff's

---

[6] Additionally, Mann's later determination to have an oral
surgeon assist after Plaintiff's tooth was extracted and a root
tip remained is consistent with his professional judgment,
particularly his initial judgment to have Plaintiff's tooth
extracted by an oral surgeon.

[7] The fact that Mann extracted others' teeth does not change
the outcome.  There is no indication that Mann unduly waited to
extract Plaintiff's tooth, and a dentist's decision whether to
extract a tooth or instead defer to an oral surgeon may vary
based upon the particular circumstances presented.  Indeed, the
specialized skills of an oral surgeon may be deemed to be
required for some extractions but not others depending on, inter
alia, the complexity and severity of the task.  See, e.g., White,
897 F.2d 103; Coleman, 444 F. Supp. 31.

1st molar on his own does not constitute an act of deliberate indifference to Plaintiff's medical needs: at the time of this decision, Plaintiff's tooth had dramatically deteriorated in comparison with its initial and intermediate conditions.  Indeed, Plaintiff's complaint is replete with allegations that, at the time of the extraction, his gum was bleeding, and he was suffering from excruciating pain.  Thus, it was within Mann's professional judgment to conclude that, at that juncture, the benefit of waiting for an appointment with an oral surgeon became outweighed by Plaintiff's need to be relieved from pain, and that Plaintiff's tooth had to be extracted immediately in order to alleviate his condition and prevent further injury.  See id.; see also Rouse, 182 F.3d at 197; Dawson, 2010 U.S. Dist. LEXIS 30513, at *8.

Finally, Plaintiff's allegations of deliberate indifference based on the gaps between his visits to Mann are contradicted by the record, which indicates that Mann was scheduling and rescheduling appointments for Plaintiff, and Plaintiff was failing to attend.  The possibility that the security-related events at the NJSP might have prevented Plaintiff from attending these appointments does not alter the result, because the issue here is not Plaintiff's reason for failing to attend his appointments, but rather, whether Mann made his services available to Plaintiff.  Here, Mann made his medical care and

services available to Plaintiff, exercised his professional judgment in selecting the care he could provide and recommend to Plaintiff, and tailored his medical judgment to Plaintiff's changing conditions.  See White, 897 F.2d 103; Rouse, 182 F.3d at 197. Therefore, this Court concludes that the record warrants judgment in favor of Mann with regard to Plaintiff's constitutional challenges.  See Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 249.

        c.    Spingler Is Entitled to Judgment in Her Favor

        Plaintiff's challenges against Spingler are based on two events; namely, Spingler's alleged failure to respond to Plaintiff's December 7, 2008, grievance about Plaintiff's medical care and Spingler's recommendation to submit a medical request form in response to Plaintiff's January 27, 2009 grievance.

        To the degree Plaintiff asserts that Spingler violated his constitutional rights by not responding to his December 7, 2008, grievance, Plaintiff's challenges are facially meritless and are beyond the realm of the Eighth Amendment issues being litigated in this matter.[8]  To the degree Plaintiff asserts that Spingler's

_____

        [8] Read as a Petition Clause claim, Plaintiff's allegation fails because "the First Amendment does not impose any affirmative obligation on the government to listen, to respond or . . . to recognize [a grievance]."  Smith v. Ark. State Highway Employees, Local 1315, 441 U.S. 463, 465 (1979); see also Minnesota State Bd. for Community Colleges v. Knight, 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to

failing to respond to his grievance constituted an act of deliberate indifference to Plaintiff's medical condition, it is undisputed that – at the time of Plaintiff's filing of his grievance – Plaintiff was provided with medical care by Mann. While Plaintiff might have had disagreements with the course of treatment chosen by Mann, Plaintiff's challenges to that effect are as insufficient against Spingler as they are against Mann. See White v. Napoleon, 897 F.2d 103; Alsina-Ortiz v. Laboy, 400 F.3d 77; Smith v. Sator, 102 Fed. App'x 907; Lopez v. Kruegar, 1990 U.S. Dist. LEXIS 6808; Coleman v. Crisp, 444 F. Supp. 31. Therefore, Spingler is entitled to judgment in her favor with regard to Plaintiff's claims asserting Spingler's failure to respond to Plaintiff's December 7, 2008, grievance.

Additionally, Spingler is entitled to judgment in her favor with regard to her response to Plaintiff's January 27, 2009, grievance.  In that grievance, Plaintiff complained that his

---

listen or respond to individuals' communications"); San Filippo v. Bongiovanni, 30 F. 3d 424, 437 (3d Cir. 1994) ("the petition clause does not require the government to respond to every communication that the communicator may denominate a petition"). Analogously, this allegation cannot present a cognizable due process challenge, becuase it is well established that "[p]risoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create any federal constitutional rights," Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997), and a failure to respond to an inmate's grievances "does not violate his rights to due process and is not actionable." Stringer v. Bureau of Prisons, 145 Fed. App'x 751, 753 (3d Cir. 2005) (citing Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996)).

condition was deteriorating and that he needed medical assistance.  Spingler did not refuse him assistance or delay assistance: she promptly responded by advising Plaintiff that he had to submit a medical request form in order to obtain medical attention to his worsening condition.  As the record demonstrates, Spingler's recommendation proved effective: Plaintiff submitted such request on February 14, 2009, and just four days later, on February 18, 2009, Plaintiff was seen by Mann.  Therefore, Spingler's response to Plaintiff evinced her attention to Plaintiff's need for medical care, and it cannot qualify as an act of deliberate indifference to Plaintiff's medical needs.  Therefore, Spingler is entitled to judgment is her favor with regard to Plaintiff's constitutional challenges. See Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 249.

    2.   Plaintiff's State Law Challenges

Finally, Plaintiff also asserted state law-based negligence claims against Mann and Spingler.

      a.   The Affidavit of Merit Aspect

In 1995, the New Jersey legislature passed the Affidavit of Merit Statute ("AMS").  See N.J. Stat. Ann. § 2A:53A-26-29.  The legislature intended the AMS to require plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious, so that frivolous claims can be identified at an early stage of litigation.  See In re Petition of Hall, 147 N.J.

379 (1997).  The AMS requires plaintiffs seeking damages for personal injuries "resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation," to provide an "affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised . . . in the treatment . . . that is the subject of the complaint fell outside acceptable . . . treatment practices."  N.J. Stat. Ann. § 2A:53A-27.  The affidavit must be provided within 60 days of the defendant's filing of responsive submission.  See id.

The AMS provides that if a plaintiff does not provide the affidavit of merit within the prescribed time frame, a court should deem it a failure to state a claim.  See N.J. Stat. Ann. § 2A:53A-29.  The Supreme Court of New Jersey stated that dismissal for failure to provide an affidavit as required by the AMS should be with prejudice in all but "extraordinary circumstances."  See Cornblatt v. Barow, 153 N.J. 218 (1998).  What constitutes "extraordinary circumstances" is a fact-sensitive analysis.  See Chamberlain v. Giampapa, 210 F.3d 154, 162 (3d Cir. 2000) (quoting Hartsfield v. Fantini, 149 N.J. 611 (1997)).  For a plaintiff to establish "extraordinary circumstances," the court must determine that the failure to provide the affidavit did not arise from the litigant's mere carelessness or lack of proper diligence.  See Chamberlain, 210 F.3d at 162.

In this case, Plaintiff opposed Mann's Motions, but he did not file an affidavit of merit within 60 days of Defendants' filing their Motions.  Nor did Plaintiff establish or even seek to establish "extraordinary circumstances" to excuse his failure to file and avoid dismissal with prejudice.[9]  Thus, because Plaintiff failed to file an affidavit of merit, as required under New Jersey law, and did not establish "extraordinary circumstances" that would adequately excuse his failure to file, dismissal of Plaintiff's state law-based negligence claims is warranted under the AMS.

      b.   The New Jersey Tort Claim Act Aspect

The New Jersey Tort Claims Act ("NJTCA"), N.J. Stat. Ann. § 59:1-1 et seq., provides a post-deprivation judicial remedy to persons who believe they suffered an injury as a result of negligent acts by the State or local government.  See Holman v. Hilton, 712 F.2d 854, 857 (3d Cir. 1983); Asquith v. Volunteers of America, 1 F. Supp. 2d 405, 419 (D.N.J. 1998), aff'd 186 F.3d 407 (3d Cir. 1999).  Under the NJTCA, before asserting a tort claim against a public entity or a public employee, a party must file a notice of claim within ninety days of the accrual of the

_____

[9] Plaintiff's status as a pro se litigant does not excuse his failure to file an affidavit of merit.  See Lee v. Thompson, 163 F. App'x 142, 144 (3d Cir. 2006). Pro se litigant's "ignorance of the law or failure to seek legal advice will not excuse failure to meet the filing deadline."  Id. (quoting Hyman Zamft and Manard v. Cornell, 309 N.J. Super. 586, 593 (N.J. Super. Ct. App. Div. 1998)).

claim.  See N.J. Stat. Ann. § 59:8-8.  If no notice is filed, the party is barred from recovery.  See id.; see also Velez v. City of Jersey City, 180 N.J. 284, 296 (2004) (notice must be given only to the governmental entity but failure to provide notice also bars claims against employees).  Upon a motion by the plaintiff supported by affidavits, the court has discretion to allow a late filing of a notice of claim if made within one year of the claim accrual date, provided that plaintiff demonstrate: (a) "extraordinary circumstances" for his failure to meet the 90-day filing requirement; and (b) that defendants are not "substantially prejudiced thereby."  N.J. Stat. Ann. § 59:8-9.

Here, Plaintiff has not complied with the notice requirements of the NJTCA and has not made the requisite showings with regard to "extraordinary circumstances" and "substantial prejudice."  N.J. Stat. Ann. § 59:8-9.  Accordingly, dismissal of Plaintiff's negligence claims against Defendants Mann and Spingler is warranted.

## IV. Conclusion

For the foregoing reasons, Defendants' Motions are granted, and Plaintiff's complaint is dismissed with prejudice.  An appropriate Order accompanies this Opinion.

/s/ JOEL A. PISANO
**United States District Judge**

Dated: November 30, 2011